# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 1, 2012

## DEMARIO JOHNSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 06-05748      J. Robert Carter, Jr., Judge**

---

**No. W2011-02123-CCA-R3-PC  - Filed February 27, 2013**

---

Post-conviction petitioner, Demario Johnson, challenges his 2008 conviction of first degree murder and resulting sentence of life imprisonment.  On appeal, he alleges the following claims of ineffective assistance of counsel: (1) failure to investigate and present evidence of his mental health history; and (2) failure to challenge the medical examiner's opinion regarding the victim's cause of death.  Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P. J., and NORMA MCGEE OGLE, J., joined.

James P. DeRossitt, IV, Memphis, Tennessee, for the appellant, Demario Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Betsy Weintraub, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Facts and Procedural History

### A.  Facts from Trial

Prior to its full recitation of the facts, this court summarized the evidence presented at petitioner's trial as follows:

This case involves the shooting death of an innocent bystander when [petitioner] fired shots into an apartment where he intended to shoot his roommate. The day before the shooting, [petitioner] and his roommate fought over money, resulting in the roommate beating [petitioner] unconscious. The roommate called the police, and [petitioner] was taken to the hospital where he was treated and released. After [petitioner] was released from the hospital, he filed a police report, obtained a handgun, and proceeded to an apartment where his roommate was helping some friends move. Upon arriving, [petitioner] fired multiple shots into the apartment and wounded four people, including the roommate and the victim, who died four months later of complications from the gunshot wound.

*State v. Demario Johnson*, No. W2008-01665-CCA-R3-CD, 2009 WL 3489841, at *1 (Tenn. Crim. App. Oct. 29, 2009), *perm. app. denied* (Tenn. April 16, 2010).

## B. Procedural History

Following petitioner's unsuccessful direct appeal, he filed a petition for post-conviction relief on February 16, 2011. As grounds, petitioner alleged the following instances of ineffective assistance of counsel: (1) failure to investigate and present evidence concerning petitioner's mental health issues; (2) failure to interview the medical examiner prior to trial; (3) failure to interview the victim's treating physicians; and (4) failure to ascertain from the medical examiner whether the hospital could have contributed to the victim's death. The post-conviction court appointed counsel on February 25, 2011, and held an evidentiary hearing on July 6, 2011.

## C. Facts from Post-Conviction Evidentiary Hearing

Petitioner[1] testified that he had been incarcerated at West Tennessee State Penitentiary in Henning, Tennessee, since 2008. He testified that when he was indicted, the trial court appointed two attorneys to represent him in the event the State pursued the death penalty. When the State determined it would not ask for the death penalty, trial counsel became his sole attorney. He confirmed that the trial court appointed a different attorney to represent him at the hearing on the motion for new trial, but his petition for post-conviction relief pertained only to trial counsel.

---

[1] Before the evidentiary hearing began, post-conviction counsel informed the court that petitioner actually answered to the name of Leo Scott. Therefore, the record reflects that post-conviction counsel called "Demario Johnson" as his first witness, but the witness answered that his name was "Leo Rashawn Scott."

Petitioner explained that on the day prior to the offense date, he was robbed and assaulted by Kevin Johnson and three other men. One of them struck him with the stock of a shotgun, rendering him unconscious. An ambulance transported him to a hospital, where he awakened as medical personnel were performing a CT scan on him. He was released from the hospital the following day. When he arrived at home, he contacted the police to make a report of the robbery and assault.

Petitioner later saw the granddaughter of the victim, Delano Bonds, Sr., exiting a store. He explained to her that her brother may have been involved in the robbery and assault. The woman asked petitioner to come over to her home, and he agreed. When petitioner arrived and knocked on the door, Kevin Johnson answered. He allegedly told petitioner, "[D]idn't I tell you that the next time, that if I saw you, I was going to kill you[?]" Petitioner testified that Mr. Johnson then walked toward him while appearing to reach for a weapon. Petitioner became frightened, so he grabbed his own firearm and shot at Mr. Johnson several times. Not knowing whether he had wounded Mr. Johnson, petitioner left the scene and turned himself in to authorities two days later. Authorities arrested him on four counts of aggravated assault. He remained in jail until the preliminary hearing date. On the date scheduled for the hearing, the State dismissed the charges. Petitioner testified that the charges were dismissed because witnesses failed to appear.

After his release, petitioner secured a job at a Family Dollar store. Approximately two months after his release, he called his father, Leo Womack, who told petitioner that investigators had telephoned Mr. Womack and informed him that petitioner needed to turn himself in because there had been a development in the case. He turned himself in and was charged with the first degree murder of Delano Bonds, Sr. Petitioner learned that when he fired his weapon at Mr. Johnson several times, a bullet struck the victim in the chest. The trial court appointed trial counsel to represent him.

Petitioner testified that trial counsel did not allow him to assist in preparing his defense. Petitioner had no idea what trial counsel's theory of the defense would be at trial. He believed that trial counsel could have used his history of mental health issues as a defense. He also informed trial counsel that he had been diagnosed with bipolar disorder, oppositional defiance disorder (ODD), and attention deficit/hyperactivity disorder (ADHD) as a child and was prescribed Depacote, Ritalin, and Seraquil for those conditions. He had been treated as an outpatient at St. Joseph's Children's Hospital from age eight through eleven for psychological and psychiatric problems. From age eleven through seventeen, he was treated at Whitehaven Mental Health Institute for depression and bipolar disorder. He also experienced violent outbursts and hyperactivity. Later, he was treated as an inpatient at Lakeside Hospital for a suicide attempt. Petitioner testified that trial counsel failed to investigate any of the grounds in support of a mental health defense. He stated that when he

addressed his history with trial counsel, she told him she would investigate it, but she did not. His mental health history was not mentioned at trial. In fact, he stated that trial counsel put forth no proof whatsoever.

Petitioner testified that the only time he met with trial counsel was when they were in court. They did not discuss trial strategy; they merely discussed the next court date. She never visited him in jail. Petitioner provided trial counsel with photographs taken after he was assaulted and the police report he filed after the robbery and assault. He believed that the only thing trial counsel did to advance his defense was to argue against premeditation by highlighting in her statements to the jury that he was afraid Mr. Johnson was going to shoot him.

In support of the petition for post-conviction relief, counsel entered medical records from Whitehaven Southwest Mental Health Institute from 1999 and 2000. Petitioner believed that because of a mix-up with his given name, more records may have existed at other facilities.

Petitioner asserted that trial counsel should have interviewed the medical examiner to ascertain the relationship between the injury petitioner inflicted on the victim and his ultimate death as a result of pneumonia months later. He claimed that had trial counsel discovered that the victim had a history of emphysema, pneumonia, or cardiopulmonary disease, she could have cast reasonable doubt on whether the gunshot wound was the eventual cause of death. Petitioner discussed this concern with trial counsel when they would meet in the holding cell outside of the courtroom.

Petitioner also claimed that trial counsel should have interviewed the victim's treating physician. An interview with the doctor could have resulted in more information about the victim's health at the time he was shot. Petitioner said that the medical examiner did not know that the victim had been shot previously and that he determined the cause of the victim's death was bronchial pneumonia. Petitioner never received the medical examiner's report or any other discovery materials.

On cross-examination, petitioner would not admit that ADHD and bipolar disorder were somewhat common disorders. He maintained that the jury might not have found him guilty of first degree murder if it had known about his conditions. He acknowledged that a doctor testified at trial that it was more likely for a person who could not walk to develop pneumonia. He did not admit, however, that the victim was paralyzed due to being shot by petitioner. Petitioner agreed that the trial transcript reflected that the medical examiner reported the victim's cause of death as "bronchial pneumonia as a complication of gunshot wound."

Petitioner further stated that it was trial counsel's responsibility to ask him about his aliases for the purpose of obtaining medical records and that it was not incumbent upon him to volunteer the information to her. On redirect examination, petitioner explained that Leo Scott is the name given to him by his parents. He was indicted under an alias, Demario Johnson. His father's name is Leo Womack, Sr. Petitioner's medical records were kept under the name of Leo Womack. He stated that he used his mother's last name when he was in school but that he also used his father's last name.

Petitioner's father testified at the evidentiary hearing. He testified that he was active in petitioner's life as he grew up and that at some point, he successfully petitioned the court for custody of petitioner. He stated that petitioner had mental problems and had been treated in various facilities. He recalled that petitioner attempted to kill himself in the living room, so Mr. Womack called an ambulance to take him to a psychiatric facility. Mr. Womack stated that petitioner was very moody growing up and was overactive.

Mr. Womack attended each day of petitioner's trial in this case. He believed that petitioner's mental health history would have been relevant to his defense. Mr. Womack stated that he took the photographs of petitioner's injuries following the robbery and assault. He did not personally tell trial counsel about petitioner's mental health history and did not recall whether he personally gave her the photographs of petitioner's injuries. Mr. Womack still had a copy of the photographs. He did not bring them to the evidentiary hearing, but the post-conviction court granted leave to supplement the record should post-conviction counsel receive the photographs.

The State called trial counsel to testify. At the time of the evidentiary hearing, she had been an attorney with the Shelby County Public Defender's office for twenty-one years and had handled capital murder cases exclusively for the previous six years. When she received petitioner's file, she obtained information about petitioner's mental health history. An intake form indicated that an attorney with the public defender's office asked petitioner if he was taking any medication, to which he answered, "No." The form further posited, "Should you be?" Petitioner again answered, "No." He informed the intake attorney that he had taken Depacote and Ritalin as a child but that he had "grown out" of that stage. Petitioner never informed any attorney of his mental health issues. He only asked trial counsel to obtain the hospital records from the robbery/assault incident. Trial counsel stated that she relied upon her clients to inform her about mental health issues. She estimated that she met with petitioner five to six times in jail.

Trial counsel testified that she categorized mental health evidence into three areas: competence to stand trial; insanity; and diminished capacity. She did not think that depression, ADHD, or bipolar disorder would be relevant to a cognitive issue, unlike

schizophrenia. Trial counsel stated that petitioner's cognitive level was much higher than that of many of her clients. She did not request a competency evaluation of petitioner. She recalled that he could discuss facts, understood lesser-included offenses, and possessed a good understanding of the law. Trial counsel did not believe that ADHD justified her requesting a competency evaluation. She also did not believe that his prior injury warranted an evaluation because he was released from the hospital within hours of being assaulted, he stood unassisted when the photographs were taken, and he had a clear recollection of the offense. Trial counsel did not believe that the injuries petitioner sustained during the robbery/assault were relevant to his actions in shooting at Mr. Johnson. During the intake interview, petitioner did not allege a connection between his injuries and his actions. Trial counsel personally listened to a tape-recording of the intake interview; she did not simply rely on other people's notes. Trial counsel made the decision regarding mental health issues based upon her personal experience.

Because this was a murder case, trial counsel believed that the difference between intent to commit aggravated assault and the intent to commit murder was important. Thus, the distinction between whether the victim died immediately or whether there was an intervening period was relevant. She recalled that the medical examiner testified that the victim died of pneumonia and that he found no significant scarring in the victim's lungs from the gunshot wound. However, the injury left the victim paralyzed, and because of his paralysis, he contracted pneumonia. She also recalled that there was no indication that the victim had "bad lungs" prior to his being shot. Trial counsel reviewed the autopsy report before the trial began. She did not request medical records from the nursing home in which the victim resided. She did not recall whether she interviewed the medical examiner prior to trial, although it was her usual practice to do so. Regardless, she felt prepared to cross-examine the medical examiner. The medical aspect of the case was straightforward and not overly complicated. In addition, there were several eyewitnesses to the shooting.

Trial counsel reviewed the discovery packet and sent a copy of it to petitioner in jail. She testified that if a client lost his discovery information, she would send it again. She reviewed the discovery with petitioner. Another attorney in her office and their investigator would have reviewed their preliminary information with petitioner, as well.

Trial counsel knew about the robbery/assault incident in which petitioner had been a victim. She obtained the medical records from his treatment, had copies of photographs depicting his injuries, and reviewed the police report petitioner filed. Trial counsel was aware that Mr. Johnson's sister had summoned petitioner to their home and that petitioner had intended to shoot Mr. Johnson, the victim's grandson. She said that the State viewed the prior robbery as motive for petitioner to commit the crimes. Trial counsel did not think that

-6-

highlighting the robbery was very helpful because it was "obviously damaging" to their case in that it supplied a motive.

At trial, counsel argued against transferred intent by advancing the theory that petitioner did not intend to kill Mr. Johnson and that petitioner acted in self-defense. She further stated that had petitioner wanted to kill Mr. Johnson, he would have done so immediately upon his release from jail. She testified that she entered into discussions with the State regarding reducing the offense to second degree murder, but the State would not agree to reduce the charge.

On cross-examination, trial counsel confirmed that she did not recall how many times she met with petitioner in jail, and her file did not reflect that information. She testified that when she is assigned a new case, her "norm" is to visit with the client in jail, introduce herself, send the client discovery through the mail, and return to the jail to review the discovery with her client. She also clarified that appellant's case had ten or eleven court dates, so she would have met with him on each of those occasions.

The post-conviction court sought clarification from trial counsel regarding her investigation into possible mental health issues. In response to the court's questions, trial counsel reiterated that one of the first things she considered in preparing a case was whether there was a mental health issue that did not "quite rise" to the level of competency or insanity. She relied upon her client's speech patterns and behavior as well as their self-reports. If she had any suspicion whatsoever regarding a client's mental health, she would seek an evaluation of the client. In petitioner's case, she did not request a mental health evaluation because she simply did not believe it was justified. Trial counsel stated that petitioner always presented himself well and spoke well. He was never withdrawn, was always animated, and was very clear in his communications with her.

The post-conviction court allowed petitioner to reopen the proof on a later date, and he presented his mother, Virginia Ann Scott, as a witness. She testified that petitioner was suicidal as a child and attempted to take his own life on four separate occasions. She also indicated that he was overly active and had to "stay moving." Ms. Scott stated that she was never contacted by trial counsel even though she was present at petitioner's trial.

Emerald Scott, petitioner's sister, testified that petitioner suffered from hallucinations, including auditory hallucinations. His behavior caused her to be afraid to be around him and play with him. She confirmed that petitioner attempted suicide at least three separate times.

## II. Analysis

On appeal, petitioner claims that the post-conviction court erred in failing to grant relief based upon the following claims of ineffective assistance of counsel: (1) failure to investigate and present evidence of petitioner's mental health history and emotional disturbances; and (2) failure to aggressively challenge the victim's cause of death.

### A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is *de novo* with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citations omitted). It follows that if this court holds that

either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court has previously held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter v. Rose*, 523 S.W.2d 934-35 (Tenn. 1975)). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

### B. Petitioner's Claims

#### 1. Failure to Investigate and Present Evidence of Mental Health History

In its order denying relief on this claim, the post-conviction court stated:

> In this case[,] there is no proof of deficient performance. This Court finds that petitioner did not inform[ ] his trial attorney of what he now

maintains are serious mental health matters. The trial strategy was to attack the mens rea issue and to show reasons that this was not a premeditated killing.

The fact that the strategy was not successful does not support a claim for Post-Conviction Relief. This is a case where petitioner and his family minimized any mental health issues until this hearing. After the first strategy was unsuccessful, petitioner now maintains that his attorney was at fault.

Trial counsel could not have known about any of these matters without Petitioner telling her. Even if counsel had been made aware, a review of the exhibits to the hearing does not demonstrate any material that would call into question Petitioner's competence or establish an affirmative defense. . . .

A brief review of the proof presented at the evidentiary hearing establishes that petitioner suffered from ADHD, ODD, bipolar disorder, and suicidal tendencies as an adolescent. He was prescribed medication for his mental health issues. Petitioner claimed that he informed trial counsel of his mental health history, that she agreed to investigate the matter, and that she failed to do so. Trial counsel maintained that petitioner downplayed his mental health history during the intake interview by stating that he had been prescribed Depacote and Ritalin as a child but that he had "grown out" of that stage.

Petitioner failed to establish that trial counsel's performance was deficient. In addition to relying on the information petitioner supplied during the intake interview, trial counsel also relied upon her interactions with petitioner in determining there was no need for a mental health evaluation. Moreover, petitioner failed to present the testimony of an expert at the evidentiary hearing to explain what, if any, mental health evidence trial counsel should have advanced at trial. *See James E. Jackson*, No. M2001-02005-CCA-R3-PC, 2002 WL 31757477, at *8 (Tenn. Crim. App. Dec. 6, 2002) (concluding that when petitioner did not present mental health experts at the evidentiary hearing, he failed to provide evidence of trial counsel's deficient performance in not pursuing a mental health defense); *see also Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (stating that in general, the only way a petitioner can establish that trial counsel's failure to interview or present a witness in support of his defense at trial inured to his prejudice is to present the witness at the evidentiary hearing). We agree with the post-conviction court's determination that petitioner failed to carry his burden with regard to this claim of error.

2. Failure to Aggressively Challenge the Victim's Cause of Death

In denying relief, the post-conviction court did not address this claim of ineffective assistance of counsel. Although not specifically addressed in the order denying relief, we

note that in the concluding paragraph of the order, the post-conviction court determined that petitioner failed to carry his burden of proof. *See Kardius Wilkes*, No. W2009-1476-CCA-R3-PC, 2010 WL 3293726, at *5 (Tenn. Crim. App. Aug. 18, 2010) (affirming post-conviction court's denial of relief even though it did not specifically address each issue in its order but found that petitioner failed to prove his factual claims by clear and convincing evidence). We note that the trial court is required to address every claim raised by petitioner. Tenn. Code Ann. § 40-30-111(b) (2012).

With regard to this issue, trial counsel testified that although she did not recall whether she interviewed the medical examiner as was her usual practice, she reviewed the autopsy report prior to trial and felt comfortable cross-examining him. She noted no indication that the victim had any lung-related health problem prior to his being shot and that he contracted pneumonia as a result of being left paralyzed. Petitioner failed to present the testimony of an expert at the evidentiary hearing to counter the medical examiner's opinion as to the victim's cause of death. *See James E. Jackson*, 2002 WL 31757477, at *8; *see also Black*, 794 S.W.2d at 757. Petitioner failed to demonstrate either deficient performance of trial counsel or prejudice ensuing therefrom. He is not entitled to relief on this claim.

## CONCLUSION

After a thorough review of the record, the parties' briefs, and the applicable law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE

-11-